STATE of Missouri ex rel. Phyllis RESER, Director of the Missouri Division of Family Services, Plaintiff-Relator,

v.

Fred RUSH, Circuit Judge, 11th Judicial Circuit, State of Missouri, Respondent.

No. 60352.

Supreme Court of Missouri,
En Banc.

March 13, 1978.

Richard Huber, Columbia, Edwin H. Steinmann, Div. of Family Services, Jefferson City, John D. Ashcroft, Atty. Gen., Louren R. Wood, Asst. Atty. Gen., Jefferson City, for plaintiff-relator.

Robert V. Niedner, St. Charles, for respondent.

NORWIN D. HOUSER, Special Judge.

This is an original proceeding in mandamus. On July 29, 1977 Linda Cunningham applied to the Missouri Division of Family Services for benefits under § 208.040, RSMo 1969, as amended by Laws 1977, p. ——, H.B. No. 601, § 1, effective July 1, 1977, relating to aid to families with dependent children. She had previously been granted rights to support, to be paid by Donald Cunningham, by virtue of an order entered in the decree divorcing these parties. Subsection 2(2) of § 208.040 provides that in order to be eligible for benefits each applicant shall assign to the division in behalf of the state any rights to support from any other person such applicant may have "which have accrued at the time such assignment is executed." On the same day she applied for benefits Linda Cunningham assigned to the division "any and all accrued (past), present, or future rights to support" to which she was entitled. On August 18, 1977, pursuant to subsection 5 of § 208.040, the division notified the court of the assignment. Subsection 5 provides that "Upon such notice the court shall order all support payments to be made to the clerk of the court as trustee for the division as assignee of the support rights * * * ." Honorable Fred Rush, Judge of the Eleventh Judicial Circuit, failed and refused to make this order, whereupon the director of the division of family services filed a petition in mandamus in this Court to require respondent judge to order the support payments in question to be made to the clerk of the court pursuant to provisions of said subsection 5, claiming that the duty prescribed is purely ministerial and not discretionary. Our alternative writ issued. Respondent circuit judge filed a return challenging the right of Linda Cunningham to assign her rights to support granted by court order; alleging that the purported assignment is overly broad in that it includes not only accrued support payments but also future rights to support, and continues until the claim of the division for repayment of unreimbursed assistance payments is satisfied, whereas paragraph (2) of

subsection 2, supra, limits the assignment to rights which have "accrued at the time such assignment is executed"; denying that subsection 5 directs him to order future payments to be made to the clerk; denying that the duty thereby prescribed is purely ministerial and alleging that the duty is discretionary. Respondent further alleged that § 208.040 is unconstitutional in that it deprives the children of Donald and Linda Cunningham of property without due process of law in violation of Section 1 of the Fourteenth Amendment to the Constitution of the United States and Section 10 of Article I of the constitution of Missouri, and that the section violates public policy.

Relator filed a 17–page reply. No evidence was heard. No depositions were filed. No facts were stipulated or submitted, other than the few admissions of fact contained in the pleadings. Relator's reply was a combination reply and brief in support. Respondent filed a brief on December 9, 1977. On December 29, 1977 counsel for the Office of Support Enforcement of the Division of Family Services and an Assistant Attorney General wrote to counsel for respondent, and sent a copy of the letter to the Clerk of this Court, advising that Linda Cunningham's case has been closed; that she is no longer a recipient of AFDC benefits, "having become employed and ineligible for AFDC because of excessive income," so that the division is "no longer entitled to current support payments due Linda Cunningham from Donald Cunningham by virtue of the change in AFDC status." Counsel asserted, however, that the case is not moot and the issue of the validity of the assignment remains viable, because (1) certain monies in the hands of the circuit clerk remain to be disposed of—monies claimed by relator, but in respondent's view due to be paid to Linda Cunningham, the same being support payments made by Donald Cunningham to the clerk under the assignment; (2) there are in the Eleventh Judicial Circuit numerous similar situations presenting the same legal issue; (3) there are presently numerous parents paying monies to the Circuit Clerk of St. Charles County; (4) the circuit clerk has received several thousand dollars in assigned support monies, and additional monies will come in, and (5) any other case could be closed for the same reason Linda Cunningham's case was closed, before the issues were decided. Counsel for respondent joins counsel for relator in requesting a decision notwithstanding the case may be declared moot.

■ Whether the duty of the court under § 208.040, subsection 5 is mandatory or merely discretionary is a question which has risen throughout the state in the administration of this law, and is likely to arise again. The question involves a determination of public rights or interests under conditions which may be repeated at any time. The problem presented is one which is "capable of repetition, yet evading review," and needs to be resolved and put to rest. *Southern Pacific Terminal Co. v. I.C.C.*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Moore v. Ogilvie*, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). Accordingly, notwithstanding the suggestion of mootness, we will decide the case on the merits, being of opinion that the questions involved are matters of public rights or interests under conditions which may be repeated any time. *In re Marshall*, 478 S.W.2d 1, 5[6] (Mo.banc 1972); *State ex rel. Laclede Gas Co. v. P.S.C.*, 535 S.W.2d 561, 565[1] (Mo.App. 1976).

■ On the principal question before us we rule that the duty of the court in this situation is mandatory and not permissive, ministerial and not discretionary, under the plain language of the subsection, which directs that "Upon such notice the court *shall* order all support payments to be made to the clerk of the court as trustee for the division as assignee of the support rights * * *. Notification to the court by the division of the assignment of support rights shall *in and of itself* authorize the court to make the clerk such trustee, notwithstanding any existing court order, statute or other law to the contrary, *and the court*

*need not hold a hearing in the matter."* (Our emphasis.)

Attending to respondent's other contentions, it is first urged that Linda Cunningham had no legal right to assign her rights to support granted by the divorce decree. Respondent cites authority for the proposition that agreements between divorced spouses releasing the ex-husband from his obligation to pay his former wife child support, so as to deprive minor children of support money decreed by the court, are void. These cases are not authority for the proposition advanced. Linda Cunningham not only had the right to assign her rights to support but if she desired to become eligible for benefits under § 208.040 it was her statutory duty to do so.

■ Respondent contends that the assignment is overly broad in that it includes "not only accrued support payments, but also future rights to support and continues until the claim of the Division for repayment of unreimbursed assistance payments is satisfied, whereas Sec. 208.040 subd. 2(2) limits the assignment to rights which 'have accrued at the time such assignment is executed.'" The use of the term "future rights to support" in the division's assignment form is unfortunate and inappropriate, and should be discontinued. In this context future rights, technically speaking, are rights which have not yet vested. The subsection requiring assignment of rights to support plainly contemplates vested, existing rights *in esse,* and not rights which have not as yet come into being.

Respondent argues that subsection 5 does not direct him to order *future payments* to be made to the clerk; that in passing H.B. 601 the General Assembly intended that only support payments which had become delinquent be assigned to the state; that it was not the legislative intent that current and future payments of support (not yet delinquent) be assigned to the state. In making this contention respondent confuses *rights* which have accrued with *payments* which have accrued. Paragraph (2) of subsection 2 of § 208.040 refers and relates to *any rights to support which have accrued* at the time the assignment is executed. It says nothing about *payments* which have accrued or *payments which are delinquent.* A vested right to support may pertain and relate to payments past due and delinquent, or a current payment, or payments which will come due in the future. The assignment contemplated by the subsection is designed to transfer in behalf of the state any and all existing rights to support then possessed by the applicant, and this includes all accrued rights to support, i.e., vested, existing rights to receive support payments which are past due, currently due, or which will become due in the future.

Respondent expresses apprehension on account of the possibility that children might be deprived of their right to support without due process of law between the time of the assignment and the time state aid would be forthcoming, or during periods in which insufficient funds to pay state aid have not been appropriated. The first fear is met by the terms of the assignment, which is not effective until the application is approved. The possibility of failure to appropriate sufficient funds is conjectural and speculative, but in any event the possibility that it might happen provides respondent with no excuse for failure to perform his statutory duty.

Respondent proposes that subsection 5 of § 208.040 is original in Missouri, and is not necessary or required in order to comply with U.S. Code Title 42 (providing federal funding of state aid to dependent children programs); that it usurps the function of the courts by transferring the traditional function of the courts to the division of family services, and strips the courts of their functions under Chapter 452, RSMo §§ 130–150 (providing means for enforcement of orders for maintenance or support). This is not true. On the contrary, instead of subtracting existing enforcement procedures, the General Assembly by H.B. 601 has added new means of enforcement for persons in the situation of Linda Cunningham. § 208.040, subsection 5; and § 207.-025, RSMo 1969.

There is no merit in respondent's charge that he has no authority to order support payments made to anyone other than the person entitled to receive the payments. Section 452.345 subd. 1, RSMo 1969 authorizes the court at any time to order that support payments "be made to the circuit clerk as trustee for remittance to the person entitled to receive the payments." When the assignment is made the director of the division, on behalf of the state, becomes "the person entitled to receive the payments." The statute not only authorizes but in mandatory language directs that the court order payments made to the clerk as trustee, etc.

■ Purporting to speak for the children of Donald and Linda Cunningham, respondent poses several questions concerning the operation of this law and attempts to demonstrate that their constitutional rights to due process of law have been violated. We will not entertain the constitutional questions raised by respondent on behalf of the children of the Cunninghams because, among other reasons, respondent circuit judge has no standing to raise these issues, which are personal to them. "[N]ot just anyone has standing to attack the constitutionality of a statute. Only those adversely affected by the statute in question have the requisite standing." *Ryder v. County of St. Charles*, 552 S.W.2d 705, 707[1] (Mo.banc 1977). One of the primary objectives of the standing doctrine, as pointed out in *Ryder v. County of St. Charles*, is to prevent parties from creating controversies in matters in which they are not involved and which do not directly affect them. A litigant must himself be hurt by the unconstitutional exercise of power before he may be heard to complain. *Blue Ridge Bank v. State Banking Board*, 509 S.W.2d 763, 766 (Mo.App. 1974). Respondent judge is not himself injured, damaged or prejudiced or in any way adversely affected by the enforcement of the statute. There is no conceivable way in which the statute could be applied to his disadvantage. 7 Mo.Dig. Constitutional Law ⬤⟿42(1).

Respondent further contends that § 208.-040 violates the public policy of Missouri "in attempting to remove the responsibility for and supervision of payments for support of minor children in dissolution proceedings from the Court to a State agency established for the purpose of distributing public funds to indigent persons." The responsibility and supervision referred to are not removed from the courts by this legislation, nor is the state agency invested with the responsibility for determining the need for or amount of support payments in a dissolution proceedings. As to supervision: the act requires support payments to be made to the clerk of the court, in whose hands the funds are subject to strict scrutiny and supervision by the court. Section 208.040 does not *violate* the public policy of Missouri in this field; it *declares* that policy. " * * * [W]hen the legislature, acting within its constitutional orbit, has declared the public policy of the state, 'such declared policy is sacred ground which we may not invade' * * * ." *State ex inf. Dalton v. Miles Laboratories*, 365 Mo. 350, 282 S.W.2d 564, 574[15] (Mo.banc 1955). "In determining the validity of statutes enacted under the police power * * * courts must disregard all matters relating to the wisdom, adequacy, propriety, expediency or policy of the act in question. *State v. Day-Brite Lighting*, 362 Mo. 299, 240 S.W.2d 886, 893[6, 7] (banc 1951); 16 C.J.S. Constitutional Law § 198, p. 960." *State v. Ewing*, 518 S.W.2d 643, 648[7] (Mo.1975).

It is true, as suggested, that subsection 5 of § 208.040 provides that "When the recipient is no longer eligible for aid the assignment shall terminate, * * * except for those unpaid support obligations still owing to the state under the assignment at the time of the discontinuance of aid. Such unpaid obligations shall be collected by the prosecuting attorney up to the amount of unreimbursed aid paid by the division prior to or after execution of the assignment of support rights." It is also true that the assignment executed by Linda Cunningham provides that upon termination of assistance payments the "assignment shall remain in effect as to the unpaid support obligations owing at the time of the discon-

tinuance of assistance payments until the claim of the Division for repayment of the unreimbursed portion of such assistance payments is satisfied." On the basis of these provisions both parties would have this Court in this mandamus proceeding determine how much money has been deposited with the clerk by Donald Cunningham, who is entitled thereto, and make orders for the disbursement of the monies. This Court, however, is in no position to make such determinations and render such judgment, for two reasons: First, these issues are wholly outside the issues raised by the petition, return and reply; second, we are in possession of no record facts on these issues. Neither party has demonstrated, by way of admissions, stipulation or testimony, what the support obligations were; what payments have been made, and when; what payments, if any, were due and owing at the time of discontinuance of assistance payments; what portion of the payments has been reimbursed and what remains unreimbursed, etc. Any judgment we might render based on the sparse facts admitted by the pleadings would be conjectural, speculative and advisory merely, with no foundation in fact except a copy of an attorney's letter appearing in the file and assertions in the appellate briefs, neither of which constitutes evidence upon which a court may adjudicate, and neither of which is sufficiently specific and complete to form the basis of a judgment.

The funds in question, now in the registry of the divorce court, are subject to the orders of that court. Relator may file a motion to intervene in the divorce action for the purpose of contending for an order of disbursement with respect to all or whatever portion of the funds relator claims the division is entitled under the law. Likewise Linda Cunningham, if so advised, may lay claim to any undistributed funds by filing a motion for disbursement.

The alternative writ is made peremptory.

MORGAN, C. J., and BARDGETT, DONNELLY, RENDLEN and SEILER, JJ., and ANDREW J. HIGGINS, Special Judge, concur.

HENLEY and FINCH, JJ., not sitting.