M & P ENTERPRISES, INC., Appellant,

v.

TRANSAMERICA FINANCIAL
SERVICES, et al.,
Respondents.

No. 79108.

Supreme Court of Missouri,
En Banc.

April 29, 1997.

As Modified on Denial of Rehearing
May 27, 1997.

Phillip K. Gebhardt, Maryland Heights, for Appellant.

Andrew R. Kasnetz, Dale Barken Glazer, St. Louis, for Respondents.

HOLSTEIN, Chief Justice.

The purchaser of real property at a delinquent sale appeals entry of a partial summary judgment in favor of respondents on three counts of the purchaser's petition and the dismissal of two remaining counts. The principal question presented is whether a recorded deed of trust is extinguished by a third tax sale where the lien holder had no written notice before the sale, but was given post-sale notice of a purported right to redeem the property. This Court has jurisdiction because the constitutionality of chapter 140, RSMo,[1] which governs tax sales, is at issue. *Mo. Const. art. V, § 3.* Because chapter 140 does not allow lien holders to redeem property after a third tax sale, such sale cannot, consistent with due process, extinguish the lien of the holder of a recorded deed of trust unless the lien holder is given notice by mail or personal service before the sale. The judgment of the trial court is affirmed.

### I.

On January 17, 1986, Larry and Valerie Stranz borrowed $21,378 from Transamerica Financial Services, Inc. (the lender) secured by a residence located at 128 Becker Drive in St. Louis County. The Stranzes executed a promissory note in favor of the lender to repay the original principal with interest at an annual percentage rate of 19.44%. As security for payment of the loan, the Stranzes executed a deed of trust granting a security interest in the property to Leslie A. Davis (the trustee), as trustee for the lender. Though the deed of trust is silent as to which party is responsible for the payment of the property tax, the Stranzes agreed to pay all taxes accruing against the property under the terms of the promissory note referenced in the deed of trust. The deed of trust was recorded in the records of St. Louis County on January 24, 1986.

When the 1986 loan was made, the property was subject to a recorded deed of trust dated November 5, 1968, which secured a loan held by Gershman Investment Corporation. On January 24, 1986, the date the lender's deed of trust was recorded, the lender paid off in full the 1968 deed of trust from the proceeds of its loan. A full deed of release of the 1968 deed of trust dated May 5, 1986, was recorded in the records of St.

---

1. All references to statutes are to RSMo 1994, unless otherwise noted.

Louis County. At the time of the recording of the full deed of release, the promissory note secured by the 1968 deed of trust was produced and canceled.

The Stranzes failed to pay real estate taxes due on the property for the years 1988 through 1992. After publishing notice in a local newspaper of general circulation, the collector of revenue first offered the property for sale at a delinquent tax sale on August 26, 1991. No one purchased the property at the first offering. Following publication of notice, the property was offered for sale a second time on August 24, 1992. Again the property was not sold.

On August 23, 1993, following publication of notice, the collector of revenue sold the property to M & P Enterprises (the purchaser) at a third offering for $3,703. Prior to the 1993 delinquent tax sale, the collector of revenue mailed notice of the sale and taxes due to the Stranzes. The lender did not receive prior written notice of the third tax sale either by mail or by personal service. The collector of revenue issued a collector's deed for taxes to the purchaser dated August 23, 1993, which was subsequently recorded in the records of St. Louis County. The collector of revenue also issued a receipt to the purchaser for the purchase price of the property. The receipt contains the following disclaimer:

> The Supreme Court of Missouri has determined that deeds of trust, mortgages and other security interests may not be extinguished by tax sales pursuant to Chapter 140, R.S. Mo., 1978, but instead may remain in full force and effect. The St. Louis County Collector of Revenue shall, upon this sale, transfer only such interests as he, the Collector, possesses, and the Collector makes no warranties, guaranties, or other affirmations as to the title to be transferred by this sale.

This same disclaimer was also published in the newspaper along with the listing of properties to be sold at the 1993 tax sale.

The purchaser interpreted § 140.250 and § 140.405 as providing a ninety-day right of redemption to lien holders after the third tax sale. Accordingly, by letter dated September 13, 1993, the purchaser notified the lender that it had a right to redeem its lien on the property by December 13, 1993. By letter dated December 8, 1993, the lender tendered to the collector of revenue the sum of $3,869 for redemption of its lien on the property. The collector of revenue refused the lender's tender of payment, apparently interpreting chapter 140 as not allowing redemption by lien holders after a third tax sale.

On August 15, 1994, the purchaser filed a five-count petition to obtain court confirmation of its tax deed, to quiet title, and for other relief, which is the subject of this appeal. The trial court concluded that the deed of trust was not extinguished by the third tax sale and decreed it to be in full force and effect. Accordingly, the trial court entered a partial summary judgment in favor of the lender and trustee on Counts I, II and III and dismissed Counts IV and V as to those defendants.

## II.

The Jones–Munger Act (chapter 140, RSMo) provides for the annual sale of real property on which payments of property taxes have been delinquent. § 140.150.1. Prior to the sale, the county collector must publish notice once each week for three consecutive weeks. § 140.170.1. In August of each year, the county collector conducts a delinquent tax sale. § 140.150.1. If, at the first offering, no one bids a sum equal to the delinquent taxes thereon with interest, penalty and costs, a second offering is made the following August. § 140.240.1. If no one submits an adequate bid at the second offering, a third offering is made the following August, and the property is sold to the highest bidder. § 140.250.1. Counties are authorized to bid at third offering delinquent tax sales to prevent loss to the taxing authority from inadequate bids. § 140.260.1.

A first or second tax sale is followed by a two-year redemption period during which the "owner or occupant of any land or lot sold for taxes, or any other person having an interest therein, may redeem the same" by paying the county collector the purchase price plus cost of the sale and interest. § 140.340.1.

The county in turn remits the payment to the purchaser of the property at the tax sale. *Id.*

The purchaser at a first or second offering acquires a certificate of purchase. *§ 140.290.1.* The "holder of a certificate of purchase, throughout the two years immediately succeeding the tax sale, is vested with an inchoate or inceptive interest in the land subject to the absolute right of redemption in the record owner in whom the title remains vested." *State ex rel. Baumann v. Marburger,* 353 Mo. 187, 182 S.W.2d 163, 165 (1944). Legal title does not vest in the purchaser until the period of redemption has lapsed and the sale is consummated by the purchaser exercising the right to have legal title transferred. *Id.* 182 S.W.2d at 165–66. If no one redeems the property during the statutory redemption period, the county collector executes to the purchaser a deed to the property, which vests in the grantee an absolute estate in fee simple. *§ 140.420.1.*

As the Jones–Munger Act was originally enacted in 1933, the owner or occupant of any property sold for taxes—whether at a first, second or third offering—had a two-year right to redeem their interest in the property. *1933 Mo. Laws* 432–33. However, in 1939 the statute was amended to eliminate the two-year redemption period for property sold at a third offering tax sale. *1939 Mo. Laws* 851–52.

Under the Jones–Munger Act, prior notice of the sale of property for delinquent taxes is solely by publication. The statute does not require that prior mailed notice be sent to lien holders of record. *See §§ 140.030, 140.150,* and *140.170.* Prior to the decision of the United States Supreme Court in *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), constructive notice by publication alone was held to comport with the requirements of due process under the theory "that those with an interest in property were under an obligation to act reasonably in keeping themselves informed of proceedings that affected that property." *Id.* at 804, 103 S.Ct. at 2714 (O'Connor, J., dissenting).

*Mennonite Board of Missions* brought about a significant change in the notice procedures required to enforce the state tax lien. "When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service." *Id.* at 798, 103 S.Ct. at 2711. Accordingly, this Court, citing *Mennonite Board of Missions,* held that the notice-by-publication procedure of the Jones–Munger Act was insufficient to satisfy the due process rights of a publicly recorded deed of trust holder: "We conclude that where a deed of trust naming the deed of trust beneficiary is publicly recorded, notice by publication alone is insufficient and must be supplemented by notice mailed to the beneficiary's last known available address or by personal service." *Lohr v. Cobur Corp.,* 654 S.W.2d 883, 886 (Mo. banc 1983).

In an apparent response to the *Mennonite Board of Missions* and *Lohr* decisions, the General Assembly of Missouri attempted to cure the constitutional defect in the Jones–Munger Act by amending § 140.250 and by enacting a new § 140.405. *1984 Mo. Laws* 431–32. Rather than requiring county collectors to provide prior mailed notice to lien holders of record, the General Assembly required the purchaser of the property to conduct a title examination and mail post-sale notice to inform lien holders that they have a right to redeem the property. Apparently, the General Assembly chose not to impose on the collectors of revenue the cost of providing notice, which would include the cost of conducting a title examination on each property to be sold and the cost of mailing notice to all lien holders identified.

Subsections 1 and 2 of § 140.250 as amended in 1984 provide as follows:

**140.250. Third offering of delinquent lands and lots—subsequent sale—collector's deed.—**

1. Whenever any lands have been sold or shall hereafter be offered for sale for delinquent taxes, interest, penalty and costs by the collector of the proper county for any two successive years and no person shall have bid therefor a sum equal to the delinquent taxes thereon,

interest, penalty and costs provided by law, then such county collector shall at the next regular tax sale of lands for delinquent taxes sell same to the highest bidder, and there shall be no period of redemption from such sales.

2. No certificate of purchase shall issue as to such sales, but the purchaser at such sales shall be entitled to the issuance and delivery of a collector's deed upon completion of title search action specified in section 140.405.

The 1984 amendment, in subsection two, substituted "issuance and delivery of a collector's deed upon completion of title search action as specified in section 140.405" for "immediate issuance and delivery of a collector's deed."

Section 140.405, RSMo 1986 (repealed), as enacted in 1984, stated:

**140.405. Purchaser of property at delinquent land tax auction, deed issued to, when—loss of interest, when.**—Any person purchasing property at a delinquent land tax auction shall not acquire the deed to the real estate, as provided for in section 140.420, until he meets with the following requirement or until he makes affidavit that a title search has revealed no publicly recorded deed of trust, mortgage, lease, lien or claim on said real estate. At least ninety days prior to the date when he is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem his security or claim. Notice shall be sent by certified mail to any person at his last known available address. Failure of the purchaser to comply with this provision shall result in his loss of all interest in said real estate.

The 1984 legislation (§§ 140.250 and 140.405, RSMo 1986) was construed in *Russo v. Kelm*, 835 S.W.2d 568 (Mo.App.1992), so as to require the purchaser at a third offering tax sale to conduct a title search. *Id.* at 570.

However, § 140.405 was amended in 1987 to provide as follows:

**140.405. Purchaser of property at delinquent land tax auction, deed issued to, when—loss of interest, when.**—Any person purchasing property at a delinquent land tax auction, *other than persons purchasing property at a third offering for which there is no period of redemption pursuant to section 140.250,* shall not acquire the deed to the real estate, as provided for in section 140.420, until he meets with the following requirements or until he makes an affidavit that a title search has revealed no *publicly recorded* deed of trust, mortgage, lease, lien or claim on the real estate. At least ninety days prior to the date when he is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon that real estate of the latter person's right to redeem his *publicly recorded* security or claim. Notice shall be sent by certified mail to any such person at his last known available address. Failure of the purchaser to comply with this provision shall result in his loss of all interest in the real estate.

(Emphasis added.) The emphasized language was added by the 1987 legislation. *1987 Mo. Laws* 542–43. As noted by the court in *Russo,* the 1987 amendment made it clear that the title search and redemption procedures of § 140.405 no longer apply to third tax sales. 835 S.W.2d at 570 n. 1.

### III.

■ As best can be discerned,[2] the purchaser argues in its first point on appeal that the trial court erred in granting partial summary judgment in favor of the lender and in

---

2. The first "point relied on" in appellant's brief is so wordy that it is nearly unintelligible. Rule 84.04(d) requires that the "points relied on" "state *briefly* and *concisely* what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous. . . ." (Emphasis added.) A model of obfus-

cation, appellant's first "point relied on" is composed of two sentences containing over 450 words. The point requires an entire page of single-spaced type and spills over onto a second page. The "points relied on" portion of the brief is not a place for rambling argument.

declaring that the tax sale did not extinguish the deed of trust, because §§ 140.250 and 140.405 give the lender a right to redeem after a third sale.

■ A circuit court's grant of summary judgment is reviewed de novo. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper if the record, viewed in a light most favorable to the non-moving party, shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Id.* at 376–78; *Rule 74.04( c )(3).*

In granting summary judgment in favor of the lender and the trustee, the trial court held that the third tax sale did not extinguish the deed of trust, and that it remains in full force and effect on the property. The purchaser challenges this holding. The purchaser argues that the deed of trust was extinguished by the foreclosure of the state's lien for taxes at the tax sale.

The purchaser contends that, under generally accepted canons of statutory construction, this Court must interpret subsection 2 of § 140.250 and § 140.405 to provide lien holders a ninety-day period of redemption and a right of notice by mail following a third tax sale.

■ First, the purchaser argues that the statute should be construed so as to provide constitutionally adequate notice to the lien holder prior to extinguishing its lien. A general canon of statutory construction is that ambiguous statutes that are susceptible to more than one construction should be construed in a manner consistent with the constitution. *See, e.g., City of Jefferson v. Missouri Dep't of Natural Resources,* 863 S.W.2d 844, 848 (Mo. banc 1993). This canon of statutory construction applies when statutes are ambiguous, so that they are susceptible to more than one construction and one construction raises constitutional questions avoided by the other.

Here, however, §§ 140.250 and 140.405 expressly state that there is no period of redemption from a third tax sale. Section 140.250, which governs third tax sales, pro-

vides that "there shall be no period of redemption from such sales." In its current version, § 140.405 expressly exempts from its application "persons purchasing property at a third offering for which there is no period of redemption[.]" To interpret the statutes to provide for a period of redemption after a third tax sale would not be construction of the statutes. It would be a judicial rewriting of the statutes. Given the plain meaning of the language used, the statutes cannot reasonably be interpreted so as to provide lien holders with a right to post-sale notification and ninety-day right of redemption following a third tax sale.

It is true that in *Russo* the court found §§ 140.250.2 and 140.405 to be ambiguous as to whether the 1984 amendment created a post-sale notice requirement for lien holders after a third tax sale. However, that ambiguity was eliminated by the 1987 amendment to § 140.450. *See Russo,* 835 S.W.2d at 570 n. 1.

■ The purchaser next argues that the 1987 amendment to § 140.405 should not be interpreted so as to repeal by implication subsection 2 of § 140.250 enacted in 1984. The purchaser is correct in asserting that repeals by implication are disfavored. *Parkway Motors, Inc. v. Thompson,* 825 S.W.2d 302, 303 (Mo. banc 1992). However, the 1987 amendment to § 140.405 does not repeal by implication § 140.250.2. Rather, the 1987 amendment clarified that there is no period of redemption following a third tax sale.

Moreover, the purchaser's argument here ignores the decision of this Court in *Anheuser–Busch Employees' Credit Union v. Davis,* 899 S.W.2d 868 (Mo. banc 1995). There, the property at issue was encumbered by a deed of trust held by a credit union. After the collector of revenue sold the property for nonpayment of taxes at a third offering, the credit union filed suit in the Circuit Court of St. Louis County seeking to quiet title to the property and requesting judicial foreclosure. In moving for partial summary judgment on its quiet title claim, the credit union argued that the failure of the collector of revenue to provide prior written notice of the tax sale to the credit union violated the

due process clause of the Fourteenth Amendment. The trial court agreed and granted summary judgment.

On appeal, this Court considered the credit union's due process argument and asked what notice must be given to a holder of a deed of trust in order for a tax sale to extinguish the holder's interest in the property. Finding the answer to be clear under both *Mennonite* and *Lohr,* the Court stated: "[T]he due process clause of the Fourteenth Amendment to the United States Constitution requires the tax authority to give written notice of a tax sale to a mortgagee by 'notice mailed to the mortgagee's last known available address, or by personal service.'" *Id.* at 869 (quoting *Mennonite,* 462 U.S. at 798, 103 S.Ct. at 2711). The Court concluded that the failure to provide written notice of the tax sale by mail or personal service resulted in the tax sale being insufficient to extinguish the deed of trust and determined that the deed of trust remained in full force and effect notwithstanding the tax sale. *Id.*

If, as purchaser argues, § 140.405 provided lien holders a ninety-day period of redemption and a right of notification after a third tax sale, the Court would have recognized that statutory right in *Anheuser–Busch* and the case would not have turned on due process considerations. The plain language of the statute explains why the Court never entertained the strained construction that the purchaser now asks the Court to impose upon § 140.405.

This Court concludes that no reasonable reading of either § 140.250 or § 140.405 provides a right of redemption to lien holders following a third tax sale. The collector of revenue, therefore, acted properly in denying the lender's tender of payment for redemption of its deed of trust on the property. The lender, as holder of a publicly recorded deed of trust, was entitled to notice mailed to its last known available address or by personal service. Because the lender received no such notice, the tax sale was insufficient to extinguish its deed of trust. The trial court's grant of summary judgment in favor of respondent is affirmed. By virtue of its recorded collector's deed for taxes and the trial court's order of default entered against Stranzes, the purchaser has a fee simple absolute interest in the property subject to the lender's deed of trust.

It is not necessary, however, for this Court to hold that § 140.405, the tax sale notice statute, is unconstitutional. There was simply a failure in this case to provide the due process notice necessary for the tax sale to extinguish the lender's security interest in the property.

## IV.

The purchaser next contends that the 1987 amendment to § 140.405 should only be given prospective application and, therefore, should not be applied to the 1986 deed of trust. Article I, § 13 of our state constitution prohibits any law retrospective in its operation. "The constitutional prohibition against laws that operate retrospectively applies if the law in question impairs some vested right or affects past transactions to the substantial prejudice of the parties." *Dial v. Lathrop R–II School Dist.,* 871 S.W.2d 444, 447 (Mo. banc 1994).

> [A] vested right "... must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another."

*Fisher v. Reorganized School Dist.,* 567 S.W.2d 647, 649 (Mo. banc 1978) (omission in original) (quoting *People ex rel. Eitel v. Lindheimer,* 371 Ill. 367, 21 N.E.2d 318, 321 (1939)).

Any purported right of the lender to redeem the property in question was contingent upon the property being sold at a delinquent tax sale, an uncertain event. Because any purported right of the lender to redeem the property was contingent upon the happening of an uncertain event, the lender had no vested right of redemption. Moreover, the purchaser lacks standing to challenge the deprivation of the lender's rights. *See, e.g., State ex rel. Reser v. Rush,* 562 S.W.2d 365, 369 (Mo. banc 1978).

## V.

The purchaser contends that the trial court erred in failing to declare the party with superior title. It reasons that by denying the purchaser's motion for summary judgment without entering an order under Rule 74.04(d), the trial court indicated that the purchaser is not the owner of the property. The purchaser argues that, under the common law applicable to a quiet title action, the trial court erred in failing to cancel the collector's deed and determine which party had superior title to the property.

■ In its prayer for relief, with respect to declarations of title, the purchaser asked only that the trial court decree that the purchaser is "the owner of the property described herein in fee simple absolute, unencumbered by any liens, deeds of trust, or other encumbrances whatsoever." As discussed above, the court properly denied this request. The trial court properly decreed that the purchaser is vested with fee simple title by virtue of the collector's deed for taxes and that the Stranzes have no interest in the property. Also, the trial court properly decreed that the deed of trust held by the lender was not extinguished by the tax sale and remains in full force and effect. The trial court was under no duty to provide relief not requested by the parties and, therefore, did not err in failing to provide some undemanded declaration regarding the rights of the parties.

Moreover, this point is rendered moot by this Court's ruling in Part III of this opinion that, by virtue of its collector's deed and the default judgment against the Stranzes, the purchaser has a fee simple absolute interest in the property subject to the lender's deed of trust.

## VI.

In Count III of its petition, the purchaser alleges that the interest rate of 19.44% per annum charged by the lender under the promissory note secured by the deed of trust is usurious under § 408.030.1, RSMo 1986. The purchaser asked the trial court to reform the promissory note to provide for interest at the maximum permissible rate of interest in effect pursuant to § 408.030.1 at the time the promissory note was executed. The purchaser also asked the trial court to declare the outstanding balance due under the promissory note.

The trial court initially denied the lender's motion for summary judgment as to Count III. Thereafter, the lender filed a second motion for summary judgment on Count III, together with additional supporting affidavits. The trial court granted this second motion in favor of the lender.

### A.

■ The purchaser contends that the trial court erred in failing to declare the amount outstanding under the promissory note, rendering the summary judgment indefinite, void and unenforceable. The existence of a justiciable controversy is a prerequisite to declaratory relief. *Farm Bureau Town & Country Ins. Co. v. Angoff*, 909 S.W.2d 348, 352 (Mo. banc 1995). In Count III, the purchaser contests only the validity under state usury law of the 19.44% interest rate charged by the lender. It does not otherwise dispute the existence of the debt or the lender's calculation of the remaining balance due under the loan. By granting the lender's motion for summary judgment, the trial court found that the interest rate of 19.44% per annum charged under the promissory note secured by the deed of trust is not usurious. Having determined this legal issue, no further dispute existed between the parties. The trial court did not err in declining to declare the exact sum due under the promissory note where no further controversy existed as to the rights and obligations of the parties to the note.

### B.

■ The purchaser argues that the order denying the lender's first motion for summary judgment as to Count III was a decision on the merits because the trial court did not enter an order under Rule 74.04(d). The purchaser asserts that the lack of an order under Rule 74.04(d) was based on the trial court's unstated belief that a trial would not be necessary to determine this matter, and that the purchaser could resolve this case on

a motion for summary judgment. Therefore, according to purchaser, the trial court should not have entertained the lender's second motion for summary judgment on Count III because it had already decided the issue on the merits in favor of the purchaser.

Rule 74.04(d) states:

(d) **Case Not Fully Adjudicated on Motion.** If on motion under this Rule 74.04 [, governing summary judgment,] judgment is not entered upon the whole case or for all the relief asked and a trial is necessary, the court by examining the pleadings and the evidence before it, by interrogating counsel, and by conducting a hearing, if necessary, shall ascertain, if practicable, what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. The court shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

The purchaser cites no authority and provides no rationale for the proposition that a renewed motion for summary judgment is foreclosed by the trial court's denial of a motion for summary judgment without an accompanying order under Rule 74.04(d).

██ An order denying summary judgment is not final and is subject to later review by the trial court. *State ex rel. Speer v. Grimm,* 599 S.W.2d 67, 69 (Mo.App.1980). A subsequent motion for summary judgment based on an expanded record is permissible.

Under the Depository Institutions Deregulation and Monetary Control Act of 1980 (Federal Deregulation Act), a loan is exempt from state law limiting the rate of interest that may be charged only if the loan is secured by a first lien on residential property. *12 U.S.C. § 1735f-7a(a)(1)* (1994). Thus, whether the lender's deed of trust constituted a first lien on the property was an issue

before the trial court in deciding the lender's motion for summary judgment on Count III. In support of its renewed motion for summary judgment, the lender filed new affidavits establishing new additional facts relevant to the resolution of that issue. For example, the renewed motion for summary judgment was supported by the affidavit of Bruce Sandweiss, Vice President of Gershman Investment Corporation, the holder of a promissory note secured by a 1968 deed of trust on the property. In his affidavit Mr. Sandweiss states that the 1968 loan was paid off in full by the lender, Transamerica, on January 24, 1986. The purchaser does not contest this fact, which supports the conclusion that the Transamerica deed of trust constituted a first lien not subject to state usury law regulation under the Federal Deregulation Act. When deciding the first motion for summary judgment, the trial court may have viewed the status of the Gershman lien as a genuine issue of material fact preventing summary judgment. However, with the benefit of the additional affidavits supporting the second motion for summary judgment, the trial court was able to find there was no genuine issue of material fact and the lender was entitled to judgment as a matter of law.

Rule 74.04(d) is designed to isolate disputed facts so as to facilitate trial of a case. It does not prevent renewed motions for summary judgment after an initial denial. The granting of the lender's second motion for summary judgment saved the trial court and the parties the time and expense of a trial. Reversing the grant of summary judgment in this case would not further the objective of Rule 74.04. The trial court did not err in entertaining the lender's second motion for summary judgment on Count III.

## C.

██ The purchaser contends that the trial court erred in granting summary judgment in favor of the lender on the merits of Count III because it maintains that the interest rate charged by the lender is usurious under § 408.030.1, RSMo 1986.

The Federal Deregulation Act preempts state usury limits for certain mortgages and other financing arrangements "secured by a

first lien on residential real property." *12 U.S.C. § 1735f–7a(a)(1).* The dispute in this case is whether the lender's deed of trust constitutes a "first lien" on certain real property within the meaning of the act.

Regulations governing the implementation of the Federal Deregulation Act were promulgated by the Federal Home Loan Bank Board under the authority of 12 U.S.C. § 1735f–7a(f). These regulations provide that state law determines whether a loan is secured by a "first lien" on real estate:

> (c) *Loans which are secured by first liens on real estate* means loans on the security of any instrument (whether a mortgage, deed of trust, or land contract) which makes the interest in real estate ... specific security for the payment of the obligation secured by the instrument: *Provided,* That the instrument is of such a nature that, in the event of default, the real estate described in the instrument could be subject to the satisfaction of the obligation with the same priority as a first mortgage of [sic] a first deed of trust in the jurisdiction where the real estate is located.

*12 C.F.R. § 590.2(c) (1996).*

The issue then is whether, under Missouri law, the lender's deed of trust had priority over all other liens upon the property at the time the allegedly usurious interest rate was charged.

On January 24, 1986, the lender, Transamerica, recorded its deed of trust and paid a portion of the proceeds of the loan to pay off in full the debt secured by the only recorded lien on the property, the 1968 loan held by Gershman Investment Corporation and secured by the 1968 deed of trust. The Transamerica promissory note states that funds distributed on January 22, 1986, included $9,689 paid to "Larry J. Stranz & Valerie A. Stranz & Gershman Investment." The affidavit of Bruce Sandweiss, noted above, confirms that Transamerica fully paid off the Gershman loan on January 24, 1986. This fact is not contested by the purchaser.

When the Gershman loan was paid off, the Gershman deed of trust was extinguished. *See Goetz v. Selsor,* 628 S.W.2d 404, 406 (Mo.App.1982). The Transamerica deed of trust was the only remaining lien on the property. Because the Transamerica loan is secured by a deed of trust and funds from the Transamerica loan were immediately paid to extinguish the debt secured by the only prior recorded lien on the property, the Transamerica loan is "secured by a first lien" on real estate within the meaning of 12 U.S.C. § 1735f–7a(a)(1).

The interest rate charged by the lender under the promissory note secured by the deed of trust is lawful by virtue of the Federal Deregulation Act, which exempts the loan from the usury laws of Missouri. The trial court properly entered summary judgment in favor of the lender on Count III of the purchaser's petition.

### VII.

The purchaser contends that the trial court erred in dismissing Counts IV and V of its petition because the purchaser believes that it is entitled to recover the amount paid for the property (Count IV) and the cost of improvements made to the property (Count V).

In *Nazeri v. Missouri Valley College,* 860 S.W.2d 303 (Mo. banc 1993), the Court set forth the standard for reviewing a dismissal for failure to state a claim upon which relief can be granted:

> A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of the plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in the case.

*Id.* at 306 (citation omitted).

### A.

In Count IV of its petition, the purchaser seeks to recover from the lender the amount it paid for the property under § 140.330.2. This subsection provides for reimbursement of the purchase price if, in an action to quiet title following a tax sale, the

court determines that the purchaser's title is invalid:

> The court shall examine the facts, and if upon the hearing of such a cause it shall appear that the complainant's title was or is invalid for any cause, such suit shall not be dismissed by the court, but the court, in cases where the tax was due and unpaid, or where the complainant's title was invalid for defect or uncertainty of description shall ascertain the amount due the complainant, for principal and interest, to be computed at not to exceed ten percent per annum, and from whom due, and shall decree the payment thereof within a reasonable time *by the owner of such land, the owner of any life estate therein, or any other person in possession as lessee thereof* and owing such sum. . . .

*§ 140.330.2* (emphasis added). As the emphasized language indicates, the remedy only runs against an owner of the property, an owner of a life estate, or any person in possession as a lessee. No mention is made of a remedy being provided against a mortgagee or the beneficiary under a deed of trust. Such parties do not have present possessory interest.

The purchaser assumes that by denying its claims of title free of all encumbrances, the court effectively is declaring that the purchaser is not the owner and that the lender has superior title. Thus, the purchaser argues that § 140.330.2 provides a remedy against the lender, as the owner of the property.

As previously discussed in Part III of this opinion, the lender is not the owner of the property. The lender is the beneficiary of a deed of trust on the property. The purchaser has a fee simple absolute interest in the property subject to the lender's deed of trust. Despite language in a deed of trust purporting to transfer title to the trustee, execution of a deed of trust only creates a lien. It has been repeatedly held that a deed of trust is merely a security for a debt under which the holder of the fee simple title continues as owner of the land. *Bankers Union Life Ins. Co. v. Floy Hanks & Mistwood, Inc.,* 654 S.W.2d 888, 889 (Mo. banc 1983); *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.,* 513 S.W.2d 365, 368 (Mo. banc 1974); *Tipton v. Holt,* 610 S.W.2d 659, 661 (Mo.App.1981).

As the transferee of property subject to a deed of trust, the purchaser occupies the same position as the grantor of the deed of trust. The purchaser, therefore, owns the property in fee simple absolute subject to the deed of trust until the lender exercises its right of foreclosure. Section 140.330.2 provides no remedy against the lender as the beneficiary of a deed of trust. The trial court properly dismissed Count IV of the purchaser's petition.

### B.

In Count V of the petition, the purchaser seeks to recover the cost of improvements made to the property under the Missouri betterment statute, § 524.160, and under general principles of the common law of unjust enrichment. The Missouri betterment statute is applicable in ejectment actions where there is "a judgment or decree of dispossession[.]" *§ 524.160.* Here there was no decree of dispossession. In addition, a person claiming the benefit of the remedy provided by the betterment statute may only be compensated for improvements "made by him in good faith on such lands ... prior to having had notice of such adverse title." *Id.* The purchaser's pleadings admit actual knowledge of the lender's deed of trust prior to making any improvements. Purchaser cannot claim the benefit of the betterment statute.

For essentially the same reasons purchaser is not entitled to relief under the betterment statute, it is also not entitled to relief under a common law theory of unjust enrichment. *See First Fed. Sav. & Loan Ass'n v. Wills,* 789 S.W.2d 873, 874–76 (Mo.App.1990). The claim was properly dismissed.

### CONCLUSION

The judgment of the trial court is affirmed.

BENTON, PRICE, LIMBAUGH, ROBERTSON and COVINGTON, JJ., and LAURA DENVIR STITH, Special Judge, concur.

WHITE, J., not sitting.